UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS JOHNSON,

      Petitioner,

                                  Case No. 12-13997

v.                                  Honorable Linda V. Parker

KENNETH ROMANOWSKI,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

      Petitioner Thomas Johnson ("Petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his pro se application, Petitioner challenges his convictions in November 2009 for assault with intent to commit murder in violation of Michigan Compiled Laws Section 750.83, unarmed robbery in violation of Michigan Compiled Laws Section 750.530, and unlawful imprisonment in violation of Michigan Compiled Laws Section 750.349b.  For the reasons stated below, the Court denies Petitioner's request for the writ of habeas corpus and declines to issue a certificate of appealability or leave to proceed in forma pauperis.

# I.  Background

Petitioner was convicted of the above offenses following a jury trial in the

Circuit Court for St. Clair County, Michigan.

This Court recites verbatim the relevant facts relied upon by the Michigan

Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1), *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> The prosecution presented evidence that defendant and others,
> including defendant's then-girlfriend, Colleen Sturdevant, schemed to
> rob someone, identified the victim, and then drove him to various
> locations, where they beat him repeatedly and took his clothes and
> other possessions.  At trial, Sturdevant testified that at the last location
> where the victim was assaulted, defendant stomped on the victim's
> neck, applying the full weight of his body.  Defendant denied standing
> on the victim's neck. Sturdevant additionally testified that defendant
> commanded her to retrieve a bottle, which Sturdevant broke and used
> to cut the victim's neck.  Defendant denied ordering Sturdevant to get
> the bottle.  In the days after the assault, defendant sent text messages
> to his friends that he had killed someone.

*People v. Johnson*, No. 296459, 2011 WL 1816461, at *1 (Mich. Ct. App. May 12,

2011).

Petitioner's convictions were affirmed on appeal. *Id., lv. den.* 490 Mich. 892,

804 N.W.2d 329 (2011).  On September 11, 2012, he filed the pending application

for the writ of habeas corpus asserting the following grounds for relief:

> I. The trial judge barred Petitioner from fully pursuing the racial
> prejudice of [the] alleged victim through cross examination, denying
> Petitioner of his right to confrontation and violating his due process

2

rights under the United States Constitution.

II. Petitioner was deprived of effective assistance of counsel when defense counsel failed to present testimonial evidence from Mariah Bell's testimony, given at co-defendant Colleen Sturdevant's trial. This evidence would have shown Sturdevant admitted being the one who cut/sliced the victim's throat, Petitioner never threatened, coerced or forced her to cut/slice the victim's throat, and would have supported Petitioner's defense that he was never the one intending to cause the death of the victim.

III. Petitioner's guilty verdict of assault with intent to murder was against the great weight of the evidence and violates Petitioner's right to due process and the Fifth and Fourteenth Amendments to the Constitution of the United States.

IV. The admission of gruesome photographs of the victim, allowed over the objections of [the] defense was an abuse of discretion by the trial judge, causing a miscarriage of justice depriving Petitioner of his rights to a fair trial, and fundamental due process in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

V. Petitioner was deprived of his Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States when his sentence guideline range was scored incorrectly, resulting in his sentence being increased.

Respondent filed an answer to the petition on March 18, 2013. Petitioner filed a reply brief on May 2, 2013.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998).

The United States Supreme Court has explained the proper application of the "contrary to" clause of § 2254(d)(1) as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (O'Connor, J., concurring).

With respect to the "unreasonable application" clause, the Supreme Court

has held that a federal court may analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

The Supreme Court more recently reiterated that AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, – , 131 S. Ct. 770, 785-86 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.  Discussion

5

**A.  Confrontation Clause Claim**

Petitioner claims his rights under the Sixth Amendment Confrontation Clause were violated when the trial court judge precluded defense counsel from cross-examining the victim regarding his prejudice against black people.  As set forth in the Michigan Court of Appeals' decision affirming Petitioner's convictions, Petitioner argued that the trial court improperly limited cross-examination relevant to the victim's racial prejudice in two instances:

> The first instance occurred when defense counsel asked the victim if he remembered telling a police detective that he used "the N word" against his assailants. The witness said no, then defense counsel persisted, "Do you recall telling [the police detective] that you're very prejudice[d] against black persons?" This question drew a prosecution objection on grounds of relevance. Defense counsel stated that the question went to "[t]hose biases ... [a]s to who did all the hitting." The trial court sustained the objection. Defense counsel then elicited testimony that the victim did not know who first hit him, and drew a negative response from the question, "You don't know who said that, didn't knock you down, white boy, right?"

> The second instance occurred during the cross-examination of the police detective. Defense counsel asked the police detective if the victim had told him "that he did something to provoke an assault upon him." The witness answered in the affirmative, and counsel asked him to elaborate:

>> He told me that during the time that [Sturdevant] and other persons were arguing with him, I know you have money on it, on you, give it to me, and him telling him I don't have money on him. That was argument, that he was talking about. He stated they kept calling one another niggers. So he said that he then began referring to

these same people that have been using those words,
called them niggers, as well.

So he felt he probably contributed to the assault by
using I am going to say the N word, if you will, back
against these people that he said were using it so he used
it.

Defense counsel later asked the detective about his meeting
with the victim in the hospital. Counsel asked, "he ... indicated to you
that he has no doubt whatsoever that his mouth was part of the
problem that evening; is that correct?" The witness replied
affirmatively. Counsel continued, "In fact he also made ... a statement
to you following that that seemed to confirm his use of the N word?"
This drew a renewed objection, in response to which the trial court
stated, "I'll allow the testimony to the extent that I have. I don't know
there is any need to continue down this path."

*Johnson*, 2011 WL 1816461, at *1-2.

The state court rejected Petitioner's Confrontation Clause claim, concluding

that the jury in fact learned through the police detective's testimony that the victim

used "potentially explosive racist language" during the assault. *Id*. at *2. The

court found Petitioner's theory that the victim's supposed racial bias was

potentially exculpatory to be speculative. *Id*. This Court concludes that the state

court's evaluation of Petitioner's claim was neither contrary to nor an unreasonable

application of clearly established federal law and was not based on an unreasonable

determination of the facts in light of the evidence presented.

"[T]he Confrontation Clause guarantees only 'an opportunity for effective

cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988) (internal quotations omitted).  It does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "The proper analysis in determining whether counsel was granted an opportunity for effective cross-examination asks whether the jury had enough information to assess the defense theory, in spite of any court-imposed limitations." *McPherson v. Woods*,

506 Fed. App'x 379, 390 (6th Cir. 2012) (citing *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)).

Although Petitioner's counsel was precluded from questioning the victim about his racial prejudice, evidence that the victim used racial epithets during the assault was introduced through the detective's testimony.  In light of the fact that any further testimony concerning the victim's racial prejudice would have been

8

cumulative to the detective's testimony, Petitioner has failed to support his claim of a need to further explore the victim's alleged bias at trial.

Moreover, even if it were unreasonable for the state trial court to limit defense counsel's questions concerning the victim's racial prejudice, Petitioner's Confrontation Clause rights were not violated because the error did not have a substantial and injurious effect on the jury's verdict. The Supreme Court has held that if the habeas court determines that a petitioner's confrontation right was violated, it must then ask whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). This Court finds the trial court's limitation on questions pertaining to the victim's racial bias harmless. There was extensive evidence, including Petitioner's own testimony, that the assailants did not know the victim before encountering him on the road before the attack (thereby making the victim's alleged racial biases irrelevant) and that Petitioner repeatedly assaulted the victim.

For these reasons, neither Petitioner's right to confrontation nor his right to present a defense were violated by the limitation on cross-examination concerning the victim's racial prejudice. Petitioner is not entitled to relief on his first claim.

### B.  Ineffective Assistance of Trial Counsel Claim

9

In his second ground for relief, Petitioner asserts that his trial counsel was ineffective for failing to use the testimony of Mariah Bell, a friend of Petitioner and Sturdevant, presented at Sturdevant's trial, to impeach Sturdevant's testimony account at Petitioner's trial. Petitioner contends that Bell's prior testimony would have shown that Sturdevant cut the victim's throat with a broken bottle and that her actions were not a result of Petitioner's threats, coercion, or force.

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must satisfy a two prong test. First, he must demonstrate that, considering all of the circumstances, his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, Petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689.

Second, Petitioner must show that counsel's performance prejudiced his defense. *Id.* To demonstrate prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice

10

is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.' " *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). Petitioner bears the burden of showing a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim, reasoning:

> [D]efendant highlights Bell's earlier testimony that Sturdevant never suggested to Bell that defendant forced her to break the bottle or cut the victim's throat with it or that Sturdevant was afraid of defendant. Defendant additionally refers to Bell's earlier testimony that Sturdevant had texted Bell that she and defendant "had picked up a kid from the Speedy Q ... and that they were getting ready to stick him," and clarified that "stick" meant "rob." Defendant argues that defense counsel "could have impeached [Sturdevant] with [Bell's testimony] and used it to expand his testimony at [defendant's] trial to include the credibility damaging/crushing statement to impeach [Sturdevant] here." Defendant does not specify any of Sturdevant's testimony at defendant's trial that would have been impeached by Bell's prior testimony.
>
> Defense counsel elicited testimony from Sturdevant that she told the police that she acted out of fear of defendant on the night in question. Sturdevant also testified on cross-examination that her statement to the police was the first time she had told anyone that she

11

was afraid of defendant.  Defense counsel additionally elicited testimony that Sturdevant previously testified that she was afraid of what defendant might do to her in retaliation if she went to the police.  However, Sturdevant did not tell the police detective that she stayed through the course of the assault of the victim because of fear of defendant.

Defense counsel used Sturdevant's earlier statements to impeach any suggestions that she participated in the instant crimes, including the cutting of the victim's throat, out of fear of defendant.  In this case, because counsel made use of Sturdevant's earlier statements to rebuff notions that she acted under duress from defendant, it is difficult to see what additional benefit Bell's testimony would have offered defendant at trial.  Further, the prosecution's theory of the case was not that defendant forced Sturdevant to act, but instead that they acted in concert.

*Johnson*, 2011 WL 1816461 at *3-4 (brackets in original).

Petitioner is not entitled to habeas relief for several reasons.  First, Petitioner does not point to prior testimony by Bell that would have impeached Sturdevant's testimony at Petitioner's trial.  Second, to the extent Petitioner claims Bell's prior testimony could have been used to impeach Sturdevant's testimony that she participated in the assault because she was afraid of Petitioner, such evidence would have been cumulative of evidence that had already been introduced to challenge Sturdevant's credibility through the cross-examination of Sturdevant by defense counsel.  The jury had significant evidence presented to it that Petitioner

12

did not force Sturdevant to act and that they acted in concert, which was consistent with the prosecution's theory of the case.  Because the jury was "well acquainted" with evidence that would have supported Petitioner's claim that Sturdevant acted independent of any fear of Petitioner, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong v. Belmontes*, 558 U.S. at 23.

Finally, Petitioner cannot demonstrate that the failure to introduce Bell's prior testimony was not a matter of sound trial strategy.  At Petitioner's trial, Sturdevant admitted to cutting the victim's throat. (11/20/09 Trial Tr. at 593-04). Thus it was not beneficial to Petitioner for his counsel to elicit extensive testimony undermining Sturdevant's credibility.

For these reasons, the Court concludes that Petitioner is not entitled to habeas relief based on his second ground.

## C.  Great Weight of the Evidence Claim

Petitioner contends that the verdict for assault with intent to murder is against the great weight of the evidence because the prosecution failed to show that he intended to kill the victim.  Concluding that Petitioner had not preserved this claim for review, the Michigan Court of Appeals reviewed it under a plain error standard and found sufficient evidence of Petitioner's intent to kill.  *Johnson*, 2011

13

WL 1816461, at *4-5.

"A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the great 'weight' of the evidence." *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985), *cert. denied*, 476 U.S. 1132 (1986); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . .."), *cert. denied*, 476 U.S. 1123 (1986).  As a matter of federal constitutional law, a jury's verdict may be overturned only if the evidence is insufficient to permit any rational juror to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *O'Neal v. Bagley*, 743 F.3d 1010, 1019 (6th Cir. 2013) (applying *Jackson*).  To render this assessment, the federal habeas court must evaluate the evidence in a light most favorable to the prosecution and may "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir. 2009) (citing *Jackson*, 443 U.S. at 319; *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)).

Under Michigan law, the elements of assault with intent to commit murder are: "(1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (internal citations and quotation marks omitted) (citing Michigan law). "The specific intent to kill may be proven by inference from any facts in evidence." *Id*. In determining the defendant's intent, a court may take into account

> [t]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made.

*People v. Taylor*, 375 N.W.2d 1, 8 (Mich. 1985) (quotation marks and citation omitted). Applying this standard, this Court finds sufficient evidence for a reasonable jury to have convicted Petitioner of assault with intent to murder.

In addition to numerous physical blows that the testimony showed Petitioner inflicted upon the victim, Sturdevant testified that at one point toward the end of the assault on the victim, she witnessed Petitioner kicking the victim in the head, torso, arms and legs. (11/20/09 Trial Tr. at 592-93). Sturdevant also testified that Petitioner choked the victim for several minutes and stepped on his throat. (*Id*. at 593.) At this point, Sturdevant testified, the victim did not appear to be breathing and blood had pooled around his head. (*Id*.) When the victim gasped for air,

15

Petitioner told Sturdevant to get a bottle from the car, which Sturdevant then used to cut the victim's throat. (*Id.* at 593-94.) Petitioner sent text messages later, indicating that he had gone too far and thought the victim was dead. (*Id*. at 690.)

Having found sufficient evidence to convict Petitioner of assault with intent to murder, he is not entitled to habeas relief on his third claim.

### D.   Admission of Photographs

In his fourth ground in support of his request for habeas relief, Petitioner contends that the trial court improperly admitted photographs into evidence depicting the victim after the assault.  " 'Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.' "  *Franklin v. Bradshaw*, 695 F.3d 439, 456-57 (6t Cir. 2012), cert. den. sub nom *Franklin v. Robinson*, 133 S. Ct. 1724 (2013) (quoting *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994)); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The admission of the photographs during Petitioner's trial did not meet this standard.  *See Franklin*, 695 F.3d at 457 (finding the standard unmet where "18 gruesome autopsy photographs of [the petitioner's] victims" were admitted).

16

**E.    Sentencing claim**

In his fifth and final claim, Petitioner contends that Michigan's sentencing guidelines were improperly scored and based on facts not proven by a jury beyond a reasonable doubt.

The state court's interpretation and application of state sentencing laws and guidelines is a matter of state concern only, *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal courts must "defer to a state's judgment on issues of state law" and "accept a state court's interpretation of its statutes." *Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001). Consequently, the contention that the trial court miscalculated the state sentencing guidelines is not cognizable on federal habeas corpus review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).

Petitioner also contends that the trial court judge violated his Sixth Amendment right to a trial by jury by relying on facts to fashion his sentence that had not been proven to a jury beyond a reasonable doubt, or admitted by the defendant.

17

In *Blakely v. Washington*, 542 U.S. 296 (2004), the United States Supreme Court invalidated a Washington sentencing scheme that permitted judges to impose sentences above standard guideline ranges if they found "substantial and compelling reasons justifying an exceptional sentence." *Id*. at 299. The defendant in *Blakely* was sentenced to more than three years above the 53-month statutory maximum of the standard range because he had acted with "deliberate cruelty." *Id*. at 303. The Supreme Court held that this increase violated the principle that, " '[o]ther than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Id*. (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  In *Cunningham v. California*, 549 U.S. 270, 274 (2007), the Supreme Court invalidated a sentence under California's determinate sentencing scheme that placed sentence-elevating fact-finding within the province of individual judges. *Id*. at 274. The Court affirmed that it had "repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Id*.

Unlike the sentencing schemes at issue in *Blakely* and *Cunningham*, Michigan has an indeterminate sentencing scheme.  *See People v. Drohan*, 715

18

N.W.2d 778 (Mich. 2006).  Under Michigan's sentencing scheme, the maximum

sentence is determined by law, not the trial judge. *See, e.g., Chontos v. Berghuis*,

585 F.3d 1000, 1001 (6th Cir. 2009) ("Under the Michigan sentencing scheme, a

particular criminal offense carries with it a statutory maximum penalty set by the

legislature.").  The sentencing guidelines provide a range within which the trial

court must set the minimum sentence.  *Drohan*, 715 N.W.2d at 790.  Because

Michigan employs an indeterminate sentencing scheme, the Sixth Circuit and the

Michigan Supreme Court have held that the United States Supreme Court's rulings

in *Apprendi*, *Blakely*, and *Cunningham* are not applicable to a sentence under

Michigan's sentencing guidelines.  *See, e.g., Deatrick v. Sherry*, 451 F. App'x 562,

564 (6th Cir. 2011); *Drohan*, 715 N.W.2d 778 (quoting *People v. Claypool*, 684

N.W.2d 278 (2004)).

        Recently, however, the United States Supreme Court ruled that any fact that

increases the mandatory minimum sentence for a crime is an element of the

criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v.*

*United States*, 133 S. Ct. 2151, 2155 ( 2013).  In reaching this conclusion, the

Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which

the Supreme Court had held that only factors that increase the maximum, as

opposed to the minimum, sentence must be proven beyond a reasonable doubt to a

19

factfinder. *Alleyne*, 133 S. Ct. at 2157-58.

Nevertheless, when Petitioner was convicted and sentenced, *Harris* was good law. *Harris* also controlled when the Michigan Court of Appeals evaluated Petitioner's sentencing claim on direct appeal. To be entitled to habeas relief, the state court's decision must have been " 'contrary to, or involved an unreasonable application of, clearly established Federal law,' *at the time the state-court decision became final, not after*." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(d)) (emphasis added). The Sixth Circuit recently held that the Supreme Court's holding in *Alleyne* is not retroactively applicable to cases on collateral review. *In re Mazzi*, 756 F.3d 487, 489-50 (6th Cir. 2014).

The Court therefore holds that Petitioner is not entitled to habeas relief based on his fifth ground.

## IV. Conclusion

For the reasons stated, the Court holds that Petitioner has not demonstrated his entitlement to habeas relief pursuant to 28 U.S.C. § 2254. The Court therefore is denying his application for the writ of habeas corpus. The Court also is denying Petitioner a certificate of appealability and leave to proceed in forma pauperis.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).

20

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing § 2254 Cases.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Petitioner's rights under the Confrontation Clause were not violated by the trial court's limitation on questioning of the victim concerning his alleged racial prejudice, as evidence that the victim used racial epithets during the assault was introduced through other testimony and any violation was harmless. Petitioner has not shown that his trial counsel provided ineffective assistance in

21

failing to offer Bell's prior trial testimony.  There was sufficient evidence for a reasonable jury to find Petitioner guilty of assault with intent to murder and his great weight of the evidence claim is not cognizable on habeas review.  Petitioner's claims concerning the admission of photographs of the victim after the assault and the trial court's scoring of his sentencing guidelines also are not cognizable on habeas review.  Finally, Petitioner's sentence did not violate Supreme Court precedent as of the date the state-court's decision affirming his sentence became final.

The Court also is denying Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App.24(a).

Accordingly,

**IT IS ORDERED**, that Petitioner's application for the writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that the Court declines to issue a certificate of appealability or to grant Petitioner leave to appeal in forma pauperis.

S/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 27, 2015

22

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, January 27, 2015, by electronic and/or U.S. First Class mail.

S/ Richard Loury
Case Manager